Date signed June 20, 2014



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
## at GREENBELT

| | |
|---|---|
| In Re: | |
| Vitalis Ojiegbe | Case No.        11-11426-TJC |
| Debtor | Chapter        13 |
| Vitalis Ojiegbe | |
| Movant | |
| vs. | Stay Violation |
| Judith L. Walter | |
| Respondent | |

### MEMORANDUM OF DECISION

The debtor Vitalis Ojiegbe (the "Debtor") filed a motion seeking sanctions for violating the automatic stay against Judith Walter, Esq. ("Walter"), who holds a judgment against the Debtor. Docket No. 55. Now before the court are cross-motions for summary judgment. Docket Nos. 100 and 117. The cross-motions raise the following issues: (1) whether Walter violated the automatic stay by serving a writ of execution on a business entity owned by the Debtor; and (2) whether Walter's service of a writ of garnishment on the Debtor's bank accounts was excepted from the automatic stay because she served the writ to satisfy a domestic support

obligation or because the accounts contained exempted funds.  The court held a hearing on the
cross-motions for summary judgment on May 13, 2014.

For the reasons set forth herein, the court concludes that Walter's writ of execution on a
separate business entity owned by the Debtor did not violate the automatic stay in the Debtor's
case.  The court rejects Walter's contention that the garnishments were excepted from the stay
because she served them to satisfy a domestic support obligation, and concludes that Walter
violated the automatic stay by garnishing the Debtor's Capital One Bank account because there
are no issues of fact in dispute as to whether it contained exempt funds.  The court further
concludes that Walter violated the automatic stay by garnishing the Debtor's bank accounts held
in Bank of America, N.A. and State Employees Credit Union, unless she can establish at trial
that the funds in the bank account were exempt property.

## Jurisdiction

The court has subject matter jurisdiction pursuant to 28 U.S.C. §§1334(b) and 157(a) and
Local Rule 402 of the United States District Court for the District of Maryland.  This is a core
proceeding pursuant to 28 U.S.C. §157(b)(1).

## Material Facts Not in Dispute

On January 25, 2011, the Debtor filed a petition for relief under Chapter 13 of the
Bankruptcy Code.  His plan was confirmed on August 29, 2011.  *See* Docket No. 49.  The
Debtor is a physician who conducts his practice from a clinic that is owned and operated by
Sunrise Medical Clinic, LLC ("Sunrise").  Docket No. 100 at ¶6.  Sunrise is a duly formed
limited liability company.  *See* Docket No. 100-35 (1040 form listing Sunrise as an LLC);
Docket No. 55 at ¶3, 13 (stating that Sunrise is known as an LLC and that the Debtor's interest in

the LLC is part of the bankruptcy estate).  The Debtor is the sole member of the LLC and listed his 100% membership interest in it on schedule B.  Docket No. 1 at 10.

On July 7, 2011, the Debtor filed divorce proceedings against his wife Magdaline Ojiegbe in the Circuit Court of Prince George's County, Maryland ("Circuit Court").  Docket No. 100 at ¶12.  On August 1, 2011, Magdaline also filed divorce proceedings in the Circuit Court and the cases were consolidated.  Docket No. 100 at ¶15.  Walter represented Magdaline in these proceedings.  A suggestion of bankruptcy was never filed in either divorce case and the parties litigated the divorce at hearings held April 2, 2012, May 20, 2012, and June 18, 2012.  Docket No. 100 at ¶¶17 and 25.  The Circuit Court entered the Judgment of Limited Divorce on September 27, 2012.  Docket No. 55-5.  The Judgment of Limited Divorce awarded rehabilitative alimony and child support to Magdaline.  *Id*. at 2–3.

The Judgment of Limited Divorce also awarded attorney fees to Walter in the amount of $13,000.  *Id*. at 3.  The order stated that if the Debtor did not pay the attorney fees in thirty days, a judgment for the attorney fees would be entered against the Debtor in favor of Walter in the amount of $13,000.  *Id*.  On November 19, 2012, the thirty day period expired and Walter filed a motion for entry of a judgment against the Debtor for the attorney fee award.  Docket No. 55-56.  The Circuit Court granted a judgment (the "Fee Judgment") in the amount of $13,000 against the Debtor in favor of Walter on December 10, 2012.  Docket No. 100-19.  On January 14, 2013 and again April 12, 2013, the Debtor filed motions requesting that the Circuit Court reconsider or vacate the Fee Judgment.  Docket No. 55 at ¶18; Docket No. 100 at ¶37.  The Circuit Court denied both motions.  Docket No. 100-22; Docket No. 100 at ¶38.

On January 29, 2013, Walter requested writs of garnishment on the Debtor's personal bank accounts at Bank of America, N.A. ("BOA"), Capital One Bank ("Capital One") and State

Employees Credit Union ("SECU") (collectively the "Accounts").  *See* Docket Nos. 117 at Ex. 7, 100 at ¶39 and 100-5 at 9.  On February 15, 2013, the Clerk of the Circuit Court issued writs of garnishment of property to BOA, Capital One and SECU.  Docket Nos. 100-5 at 9; 117-8.  All three institutions filed Garnishee's Confession of Assets.  Docket No. 55-8–55-10.

On February 1, 2013, Walter filed a request for a writ of execution directing the Sheriff's Office to execute on cash proceeds maintained in the Sunrise medical office.  Docket No. 100 at ¶40; Docket No. 117-14.  On February 15, 2013, the Clerk issued a writ of execution directing the Sheriff "to levy upon the property of the Judgment Debtor to satisfy a money judgment." Docket No. 117-15 at 1.  In furtherance of the writ, Walter wrote a letter on February 20, 2013, requesting that the Sheriff levy against the Debtor's property, consisting of cash located in the Sunrise medical office.  Docket No. 55 at ¶38 and 117-14–117-16.  On April 10, 2013, the Sheriff's Deputy appeared at the Sunrise medical office and served the writ of execution.  Docket No. 55 at ¶55.

The Debtor filed the motion seeking sanctions for stay violations on June 25, 2013. Docket No. 55.  At the parties' request, they were provided a substantial period of time for discovery.  The parties filed cross-motions for summary judgment and opposition briefs, and the matter is now ripe for resolution.

## Conclusions of Law

The Debtor alleges that Walter violated the automatic stay when she served the writ of execution against Sunrise and the writs of garnishment against the Accounts.  Walter offers numerous defenses to the Debtor's claims, focusing primarily on exceptions in the Bankruptcy Code for collection of domestic support obligations. Walter also requests that the court abstain

from hearing the motion for stay violations.  The court will turn to Walter's abstention request

first.

**Abstention**

Walter states that "[m]any federal bankruptcy courts have found that abstention was

required in circumstances in which a Debtor attempted to relitigate a state court judgment in the

bankruptcy court."  Docket No. 100 at 28.  Relying on the Circuit Court's denial of the Debtor's

motions to reconsider, Walter states that the Circuit Court "did not intend to retroactively stay

the award of attorney fees already entered in the case."  *Id*. at 29.  She concludes that "[t]his case

is purely a case involving domestic relations law and the domestic relations exception to federal

jurisdiction" and that this is a case where "it is appropriate for [the] court to abstain from further

consideration of the Debtor's motion."  *Id*. at 30.

Permissive abstention is governed by 28 U.S.C.§1334(c)(1), uncited by Walter.  It

provides that nothing in 28 U.S.C. §1334 prevents a bankruptcy court from abstaining, 'in the

interest of justice, or the interest of comity with State courts or respect for State law."  *Id*.  Courts

consider a number of factors in deciding whether to abstain from hearing a matter.  *See MacLeod*

*v. Dalkon Shield Claimants Trust*, 967 F.Supp. 856, 858 (D.Md. 1997); *Power Plant*

*Entertainment Casino Resort Indiana, LLC v. Mangano*, 484 B.R. 290, 299 (Bankr. D. Md.

2012); *In re Porter-Hayden Co*., 304 B.R. 725, 735 (Bankr. D. Md. 2004); *In re HQ Global*

*Holdings, Inc*., 293 B.R. 839, 842 (Bankr. D. Del. 2003).[1]

---

[1] Courts have determined whether permissive abstention is appropriate by assessing the following factors:

> (1) Efficiency in the administration of the debtor's estate; (2) the extent to which state
> law issues predominate over bankruptcy issues; (3) whether the issues involve difficult or
> unsettled questions of state law that would be better addressed by a state court; (4) the
> presence of a related proceeding commenced in state court; (5) the existence of a
> jurisdiction basis other than §1334; (6) the degree of relatedness or remoteness of the
> proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted
> "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy

The court declines Walter's request for abstention.  The protections afforded by the automatic stay are a critical component of the Bankruptcy Code and few matters are as fundamental to the bankruptcy process as the operation of the automatic stay.  The automatic stay represents "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl'. Protection*, 474 U.S. 494, 503 (1986) (citing S. Rep. No. 95-989, p. 54 (1978); H. R. Rep. No. 950595, p. 304 (1977)).  The important purpose of the automatic stay "in addition to protecting the relative position of creditors, is to shield the debtor from financial pressure during the pendency of the bankruptcy proceeding." *Winters by & Through McMahon v. George Mason Bank*, 94 F.3d 130, 133 (4th Cir. 1996) (citing *In re Stringer*, 847 F.2d 549 (9th Cir. 1988)).  Thus this court has a strong interest in resolving disputes concerning the scope of the automatic stay and whether it has been violated.

Moreover, the Debtor is not attempting to relitigate the award of alimony, maintenance or support, as Walter contends.  The Debtor does not challenge the Fee Judgment entered by the Circuit Court, and this court has no intention of reviewing either the Fee Judgment or any other action by that court.  The sole questions presented in the motion are whether Walter violated the automatic stay by serving the writ of execution or the writs of garnishment.  These are fundamental questions of bankruptcy law raised in a core proceeding.   Abstention is not appropriate.

Furthermore, nothing presented by Walter establishes that the Circuit Court made a determination as to whether her attempts to collect from the Debtor violated the automatic stay. The Circuit Court issued the Fee Judgment, which as a post-petition judgment on a post-petition

matters to allow judgments to be entered in state court; (9) the burden of the federal court's docket; (10) the likelihood that the commencement of the proceeding in federal court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) whether non-debtor parties are involved in the proceeding.

*MacLeod*, 967 F.Supp. at 858 (citing *In re Eastport Assos*., 935 F.2d 1071, 1075–76 (9th Cir. 1991)).

action did not itself violate the stay. There is nothing in the record before the court in this case that would lead the court to conclude that the Circuit Court even considered whether Walter violated the stay by use of the writs of garnishment or the writ of execution to collect on the Fee Judgment.

Walter relies on *Carver v. Carver*, 954 F.2d, 1573 (11th Cir. 1992) as support for her argument that this court should abstain from hearing the motion for violation of the stay. In *Carver*, the Eleventh Circuit Court of Appeals held that the bankruptcy court should have abstained from determining a remedy for an ex-spouse's failure to receive relief from the automatic stay in pursuing domestic support collections. *Id*. at 1578–80. The Eleventh Circuit held that abstention was appropriate in the interest of comity and where "it [was] clear that the Bankruptcy Court . . . was being used as a weapon in the ongoing dispute between [the parties]." *Id*. Here, however, unlike in *Carver*, the case does not present the potential conflict of becoming entangled in decisions that "could require the bankruptcy court to second guess the state court" on matters of alimony or child support which require continuing supervision. *Id*. at 1579. There is simply no second guessing to be had; the question is not whether the Circuit Court violated the automatic stay by entering the Fee Judgment – it did not. Rather, the question is whether Walter violated the automatic stay by executing on the Fee Judgment. *Carver* is unavailing.

Further, since deciding *Carver*, the 11th Circuit has upheld a bankruptcy court's decision to decline abstaining from deciding that a domestic support creditor was in violation of the automatic stay. *See In re Rodriguez*, 367 Fed. Appx. 25, 29–30 (11th Cir. 2010). In *Rodriguez*, the 11th Circuit stated that "while it has historically been the case that domestic affairs belong to the laws of the states, it is clear that Congress intended for the federal courts, through the Bankruptcy Code, to address the payment of domestic support obligations." *Id*. at 29.

Therefore, this court declines to abstain from hearing the motion for violation of the stay and will proceed to address the cross-motions for summary judgment.

**Summary Judgment Standards**

Rule 56 of the Federal Rules of Civil Procedure, made applicable here by Federal Rules of Bankruptcy Procedure 7056, provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to isolate and dispose of all factually unsupported claims or defenses. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). In this inquiry, the court considers all evidence in a light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986) (all justifiable inferences are drawn in the non-movant's favor).

The mere existence of an alleged factual dispute does not defeat a motion for summary judgment; rather the standard requires that there be no genuine issue of material fact. *Anderson,* 477 at 247–48 (emphasis added). Only disputes over the facts that might affect the outcome of the lawsuit under applicable law will preclude entry of summary judgment. *Id*. Therefore, once a motion for summary judgment is made and supported as required by Rule 56, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The non-movant may rely on any evidentiary materials listed in Rule 56(c), except the motions themselves. *Celotex*, 477 U.S. at 325. If reasonable minds could differ as to the import of the evidence, summary judgment should not be granted. *Liberty Lobby, Inc*., 477 U.S. at 248.

**Violations of automatic stay**

The filing of a bankruptcy petition operates as a stay, as relevant here, of "(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" and "(4) any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. §§362(a)(3)–(a)(4). A debtor seeking to establish a violation of the automatic stay must establish, by a preponderance of the evidence, that: (1) the defendant knew of the existence of the stay; (2) the defendant performed an intentional action; and (3) the action violated the stay. *See Brown v. Chesnut* (*In re Chesnut*), 422 F.3d 298, 302 (5th Cir. 2005); *In re Suanders*, 2014 WL 811734 *2 (Bankr. D. Md. Feb., 28, 2014); *In re Clayton*, 235 B.R. 801 (Bankr. M.D.N.C. 1998) (holding that the standard of proof is the preponderance of the evidence standard).

A violation of the automatic stay subjects the violating creditor to liability for damages, but only if it is willful. §362(k)(1). The Fourth Circuit Court of Appeals has stated that in the context of §362(k)(1), willfulness does not require the specific intent to violate the automatic stay, only that the creditor knew of the stay and intentionally committed an act in violation of the stay. *Citizens Bank of Maryland, v. Strumpf*, 37 F.3d 155, 159 (4th Cir. 1994) *rev'd on other grounds*, 516 U.S. 16 (1995); *Budget Serv. Co. v. Better Homes*, 804 F.2d 289, 292–93 (4th Cir. 1986).

**The Writ of Execution on Sunrise Does Not Violate the Automatic Stay.**

The Debtor argues that Walter violated the stay when she filed her request for a writ of execution on cash proceeds maintained in the Sunrise medical office. Docket No. 100 at ¶40; Docket No. 117-14. In Maryland, a judgment creditor may request a writ of execution to levy upon the personal property of a judgment debtor. Maryland Rule 2-642(b). Personal property is

levied on by the Sheriff, who either removes the property or affixes a copy of the writ of execution to the property. *Id.* The Debtor asserts that Walter's request and the subsequent execution of the levy on Sunrise violated the automatic stay.

For an action to violate the automatic stay it must be directed towards property of the bankruptcy estate, which encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). However, assets that are held by a separate legal entity are not property of a debtor's estate, even if the debtor owns all of the stock or interest in the entity. *See Kreisler v. Goldberg*, 478 F.3d 209, 214 (4th Cir. 2007) (holding that the automatic stay did not apply to assets of the debtor's wholly owned non-debtor subsidiary where the parent company did not have any direct interest in the assets and only had an ownership interest in the subsidiary). Consequently, the automatic stay does not apply to the separate entity's assets.

Walter's request for a writ of execution incorrectly states that the Debtor is a sole proprietor.[2] Sunrise is a registered limited liability corporation. *See* Docket No. 117-14 at 2. As an LLC, Sunrise's creditors may not hold the Debtor directly liable for the LLC's debts and the Debtor only has an interest in the profits and losses generated by Sunrise. *See* Docket No. 100-35 at 1–3, 5 (listing expenses paid by Sunrise to its creditors and only listing profits from Sunrise on Debtor's personal 1040 form). The court concludes that the writ of execution did not apply to property of the estate.

Courts have recognized an exception to the general rule that the automatic stay only applies to the debtor. *See, e.g.*, *Kreisler*, 478 F.3d at 213; *A.H. Robins Co., Inc. v. Piccinin*, 788

---

[2] The Debtor's Form 1040 profit and loss for Sunrise states "sole proprietorship" because an LLC that does not affirmatively elect to be treated as a corporation is treated as a sole proprietorship for tax purposes. *See Littriello v. United States*, 484 F.3d 372, 375 (6th Cir. 2007) (discussing a single-member LLC's option to treat an LLC as a corporation or have it treated as a sole proprietorship for tax purposes in the absence of such an election). However, the form indicates that Sunrise is an LLC. *See* Docket No. 100-35 at 3.

F.2d 994, 999 (4th Cir. 1986).  However, this exception only arises in the "unusual situation . . . when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real-party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor."  *Kreisler*, 478 F.3d at 213 (quoting *A.H. Robins Co., Inc.*, 788 F.2d at 999).  In this case, no basis exists for the court to conclude that such an identity exists between the Debtor and Sunrise.  The sole basis upon which the Debtor asserts an identity between himself and Sunrise is his 100% interest in Sunrise.  As established by *Kreisler*, merely owning 100% of a company, without more, is insufficient to extend the automatic stay to a non-debtor company.

Walter's service of a writ of execution on the Sunrise medical office did not violate the automatic stay because its assets were not assets of the bankruptcy estate.  The court will grant Walter's motion for summary judgment on this point.

**The Writs of Garnishment on the Accounts**

The Debtor argues that Walter violated the automatic stay when she served writs of garnishment on the Accounts.  In Maryland, a judgment creditor may garnish property of the judgment debtor in the hands of a third person for the purpose of satisfying a money judgment.  Maryland Rule 2-645(a).  The judgment creditor files a request for issuance of a writ of garnishment in the same action in which the judgment was obtained and, once properly filed, the clerk issues a writ.  *Id*. at 2-645(b).  The writ directs the garnishee to hold the property of the judgment debtor, except for a protected amount in financial institutions, subject to further proceedings.  *Id*. at 2-645(c); 2-645.1(d).  Accordingly, a writ of garnishment exercises control over property and, to the extent that it exercises control over bankruptcy estate property without appropriate relief, violates the automatic stay.

There is no question that Walter had knowledge of the Debtor's bankruptcy case and that she took an intentional action when she served the writs of garnishment. These points are well established in the record and not disputed by Walter. Walter, however, contends that the garnishments are excepted from the stay pursuant to certain stay exceptions provided in the Bankruptcy Code for the collection of a "domestic support obligation."

**Domestic Support Obligation**

Walter argues that the Fee Judgment is a domestic support obligation. The Bankruptcy Code defines "domestic support obligation" as a debt that is "in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated." §101(14A)(B). Courts have held that attorney fees awarded to one spouse may be domestic support obligations. *See, e.g., In re Silansky*, 897 F.2d 743 (4th Cir. 1990) (holding that attorney fees ordered to be paid to former spouse's attorney was in the nature of support for §523(a)(5) purposes); *In re Blaemire*, 229 B.R. 665 (Bankr. D. Md. 1999) (holding that fees payable to appointed counsel for minor children were in the nature of support and excepted from discharge). The Fee Judgment was awarded in connection with the judgment of divorce and the award of alimony to Walter's client, the Debtor's former spouse. No property settlement or disposition of marital assets was made in the divorce. The Debtor does not seriously dispute that Walter holds a domestic support obligation and, in any event, the court concludes that the Fee Judgment is a domestic support obligation as defined in §101(14A)(B).

The Bankruptcy Code provides exceptions to the automatic stay for the collection of domestic support obligations. Section 362(b)(2)(B) allows a domestic support obligation to be collected from "property that is not property of the estate." §362(b)(2)(B). Walter contends that

(1) the Debtor's income that is not necessary to make plan payments is not property of the bankruptcy estate, and therefore the funds in the Accounts were not property of the estate; and (2) the Accounts contained exempted funds that were not property of the estate. Section 362(b)(2)(C) provides that the filing of a petition does not operate as a stay "with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute." §362(b)(2)(C). Walter contends that her garnishment of the Accounts fits within this exception. The court will first address Walter's §362(b)(2)(C) argument.

**A writ of garnishment on a bank account is not the "withholding of income" contemplated under Section 362(b)(2)(C).**

Walter argues that her garnishment of the Accounts was "the withholding of income . . . for payment of a domestic support obligation under a judicial . . . order" and therefore excepted from the stay under §362(b)(2)(C). *Id*. The court concluded above that Walter was attempting to collect payment of a domestic support obligation and the parties do not dispute that the writs of garnishment were issued under judicial order.[3] Thus, the remaining question is whether the writs of garnishment on the Accounts constituted the "withholding of income" as that phrase is used in §362(b)(2)(C).

Walter argues that the funds in the Accounts represent the Debtor's income, and that the phrase "withholding of income" should be interpreted broadly to include the garnishment of such funds. She contends that "[t]he plain wording [of §362(b)(2)(C)] does not limit the concept of 'withholding of income' to only the withdrawal of an ongoing periodic payment from the

---

[3] In Maryland, a writ "means a written order issued by a court and addressed to a sheriff or other person whose action the court desires to command to require performance of a specified act or to give authority to have the act done." Maryland Rule 1-202(cc). Neither party has argued that the writs do not satisfy the judicial order element of §362(b)(2)(C). Without deciding this issue, the court assumes that the writs satisfy this requirement.

paycheck of a salaried or wage-earning employee of a third-party employer." Docket No. 100 at 18–19, 32–33; Docket No. 127 at 9.

When interpreting a statute, courts first consider the plain meaning of the statutory language. *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010). In examining a statute's plain meaning, courts read the statute as a whole and do not consider statutory phrases in isolation. *United States v. Mitchell*, 518 F.3d 230, 233–34 (4th Cir. 2008) (citing *United States v. Morton*, 467 U.S. 822, 828 (1984)).

Where "the statute's language is plain, the sole function of the courts is to enforce it according to its terms," except in rare cases when "the literal application . . . will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 822, 828 (1984); *Ayers v. United States Dep't of Veterans Affairs*, 473 F.3d 104, 108 (4th Cir. 2006). However, if the language is ambiguous, courts often apply a holistic approach to clarify the ambiguity because an ambiguous phrase may be clarified by context and its use elsewhere in the statute, or because only one of the permissible meanings produces a result that is compatible with the rest of the law. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988); *Yi v. Fed. Bureau of Prisons*, 412 F.3d 526, 530 (4th Cir. 2005) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)) (stating that analysis of particular statutory language is also informed by "the specific context in which that language is used, and the broader context of the statute as a whole.").

The court disagrees with Walter that the plain meaning of the phrase "withholding of income" unambiguously includes the garnishment of a bank account, even if that account was funded by deposits of income. The Bankruptcy Code does not define the term "withholding." Where Congress has not defined a specific term, the court may presume that the drafters intended

14

the term to express the ordinary meaning of the word.  *Russello v. United States*, 464 U.S. 16, 21

(1983).  In such a situation, it is appropriate to resort to dictionary definitions in the search for

the statute's plain meaning.  *Nat'l Coal. For Students with Disabilities Educ. & Legal Def. Fund

v. Allen*, 152 F.3d 283, 289 (4th Cir. 1998).

Black's Law Dictionary defines "withholding" as "[t]he practice of deducting a certain

amount from a person's salary, wages, dividends, winnings, or other income."  Black's Law

Dictionary 1837 (10th ed. 2014).  The Merriam Webster's Collegiate Dictionary includes

"withholding" as an intransitive verb form of the word "withhold" with the definition "[t]o

deduct (withholding tax) from income."  Merriam Webster's Collegiate Dictionary 1439 (11th

ed. 2003).  Both dictionaries equate withholding with a deduction from income or other funds.

Thus, the court concludes that the plain meaning of the phrase "withholding of income" does not

encompass the garnishment of a bank account into which a debtor's income has been deposited.

Nevertheless, the court will address Walter's arguments under the holistic approach since the

matter may not be free from doubt.

Prior to the "Bankruptcy Abuse Prevention and Consumer Protection Act of 2005"

Pub.L. No. 109–8, 119 Stat. 23 ("BAPCPA"), the only exception to the stay providing for the

collection of alimony, maintenance or support[4] was contained in §362(b)(2)(B).  It excepted

from the stay the collection of alimony, maintenance or support "from property that is not

property of the estate."  *See In re Gellington*, 363 B.R. 497, 501 (Bankr. N.D. Tex. 2007).  As a

result, courts held that §362(b)(2)(B) had little effect in Chapter 13 proceedings in those cases

where a debtor's post-confirmation wages were property of the estate.  *Id*.  In BAPCPA,

Congress effectively overruled such holdings by enacting §362(b)(2)(C) and providing an

---

[4] BAPCPA added the term "domestic support obligation" to the Bankruptcy Code in §101(14A).

exception to the stay for the withholding of income.  *See* 3 Collier on Bankruptcy ¶362.05[2] (16th ed. 2014).

In enacting §362(b)(2)(C), Congress expanded the exception to the stay for domestic support creditors to allow collection from debtors whose post-confirmation wages are property of the bankruptcy estate.  By excepting from the stay an order withholding support payments from a debtor's wages, support payments are easier to collect while protecting the spouses and children that depend on this financial support.  *In re Gellington*, 363 B.R. at 501.

However, this was a qualified expansion that was limited to the "withholding of income." Had Congress intended to expand the exception to collection activities without limitation, it could have done so by removing the restriction in §362(b)(2)(B) that limits collection activities to property that is not property of the estate.  Rather than modifying the language in §362(b)(2)(B), Congress chose to introduce a discreet exception to collections from property of the estate through the withholding of income.  As courts have recognized, it is likely that most, if not all, property available to satisfy a domestic support obligation in a Chapter 13 case would be traceable to income.  *See* 3 Collier on Bankruptcy ¶362.05[2] (16th ed. 2014).  This was the very reason for the recognized deficiency in §362(b)(2)(B) and the addition of §362(b)(2)(C).  *Id*. This same income is necessary to fund the plan.  Walter's interpretation of §362(b)(2)(C) would allow a domestic support creditor to freeze a debtor's accounts and render infeasible any Chapter 13 plan of reorganization, thereby depriving other creditors of their statutorily mandated recovery and denying a debtor with a domestic support creditor the "fresh start" intended by the Bankruptcy Code.  This is a far cry from a wage order that garnishes a portion of a debtor's wages to satisfy the domestic support obligation.

Walter's contention that a narrow interpretation of "withholding of income" gives a "free pass" to self-employed debtors is unavailing.  Declining to extend the interpretation of §362(b)(2)(C) to bank account garnishments does not create a hardship for domestic support creditors who seek to collect from self-employed debtors.  The domestic support creditor may seek a wage garnishment from the business entity employing the debtor, or, failing that, may seek to lift the stay.  In that event, the bankruptcy court can craft an appropriate remedy that allows the domestic support creditor to be paid without causing the failure of the plan.

The cases that Walter cites do not lead to a different conclusion or support her position that the §362(b)(2)(C) exception applies to a writ of garnishment on a debtor's bank account.  All of the cases that she cites are cases where a garnishment of wages had been entered.  *See In re Gellington*, 363 B.R. 497, 502–03 (Bankr. N.D. Tex. 2007) (finding no violation of stay where wage garnishment was by Writ of Withholding); *In re Penaran*, 424 B.R. 868, 880 (holding that withholding the debtor's income was excepted from the stay because the child support obligation arose under a judicial order); *In re Fort*, 412 B.R. 840, 849 (Bankr. W.D. Va. 2009) (Finding that a wage deduction order pursuant to a judicial order did not violate the automatic stay); *Peterson v. Peterson*, 410 B.R. 133, 134–35 (Bankr. D. Conn. 2009) (holding that the §362(b)(2)(C) exception applies to income whether the order was entered before or after the bankruptcy petition and that the exception did not apply to the marital residence).  In fact, most cases that address the §362(b)(2)(C) exception involve wage garnishment orders.  *In re DeSouza*, 493 B.R. 669, 673 (1st Cir. B.A.P. 2013).

Thus, in applying the holistic approach, the court concludes that interpreting "withholding of income" to include a writ of garnishment on a debtor's bank account into which income has been deposited is inconsistent with the plain meaning of the statute, Congressional

intent, the context of the Bankruptcy Code, and case law.  Accordingly, §362(b)(2)(C) does not

provide an appropriate exception to Walter's writs of garnishment on the Accounts.

**Earnings in excess of plan payments are part of the bankruptcy estate.**

Walter argues that only the Debtor's earnings necessary to make plan payments are

property of the bankruptcy estate, relying on *In re Leavell*, 190 B.R. 536, 540 (Bankr. E.D. Va.

1995).  She argues that the Debtor is now making more than enough money to pay his plan

payments, and therefore the funds in the Accounts are not necessary for plan payments and are

not property of the estate.  Walter did not establish, as a matter of undisputed fact, that the

Debtor generates excessive income above his plan payments.  In any event, however, her

argument fails as a matter of law.

Under §1306, post-petition earnings are property of the bankruptcy estate.[5]  Pursuant to

§1327(b) the confirmation of a plan vests property of the estate in a debtor unless otherwise

provided in the plan or order confirming the plan.[6]  Here, the Debtor's confirmed plan

specifically states that "[t]itle to the Debtor's property shall revest in the Debtor when the Debtor

is granted a discharge pursuant to 11 U.S.C. §1328."  Docket No. 39 at 3.  Similarly, the order

confirming the plan states that "the property of the estate shall not vest in the Debtor until the

Debtor is granted a discharge or this case is dismissed or otherwise terminated."  Docket No. 49

at 1.  The Debtor has not yet been granted a discharge.  Thus, by operation of §1306(a)(2) and

---

[5] Section 1306 provides:
   (a)  Property of the estate includes, in addition to the property specified in section 541 of this title–
        (1)  All property of the kind specified in such section that the debtor acquires after the commencement of
             the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of
             this title, whichever occurs first; and
        (2)  Earnings from services performed by the debtor after the commencement of the case but before the
             case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever is
             first.
   (b)  Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of
        all property of the estate.
[6] Section 1327(b) states:
   (b)  Except as otherwise provided in the plan or in the order confirming the plan, the confirmation of a plan
        vests all of the property of the estate in the debtor.

under the terms of the confirmed plan, all post-petition earnings are property of the estate. §1306(a)(2); s*ee also, e.g., In re Young*, 285 B.R. 168, 174 n. 11 (Bankr. D. Md. 2002) (Noting that property of the estate includes post-petition earnings of the debtor in a Chapter 13 case).

Walter's reliance on *Leavell* is misplaced.  In *Leavell*, the Bankruptcy Court for the Eastern District of Virginia held that under §1327(b) the confirmation of the debtor's plan vested all property of the estate in the debtor.  The court went on to hold that only a debtor's earnings necessary to make the plan payments become property of the estate.  *Id*. at 540.  The court concluded that the "balance of such post-confirmation earnings belongs to the debtor as her individual property and is not insulated from post-petition claims nor protected by the automatic stay." *Id.*

However, the holding in *Leavell* was subsequently rejected by the court in *In re Reynard*, 250 B.R. 241, 248–49 (Bankr. E.D. Va. 2000).  In *Reynard*, the court found practical problems with limiting the post-confirmation estate to property necessary for the success of the chapter 13 plan and instead held that all post-confirmation earnings are property of the bankruptcy estate and are fully protected by the automatic stay.  *Id*. at 247–48.  In any event, the facts in *Leavell* stand in stark contrast to the facts before this court.  Here, unlike in *Leavell*, the Debtor's confirmed plan and the order confirming the plan each specifically provide that property of the bankruptcy estate does not vest in the Debtor until he receives a discharge.  Therefore, the holding in *Leavell* is inapplicable.

**The Capital One account is property of the estate.**

Walter argues that the Capital One account is not property of the estate because it was not listed in the Debtor's schedules.  Walter acknowledges that the Debtor opened the account after the Debtor's petition.  *See* Docket No. 100 at 8 n. 3 and 10.  Furthermore, Walter does not argue

that the account contains exempt funds and only states that "a savings account with the same bank was listed as exempt."  Docket No. 100 at 31.

Nothing before this court could lead it to conclude that the Capital One account is not property of the estate or that it contains exempt funds.  A Chapter 13 bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case" as well as assets and the debtor's earnings acquired after the commencement of the case.  §§541(a)(1) and 1306(a)(1)–(2).  Walter has not provided any evidence that the Capital One account contains exempt funds or that it ever held exempt funds, either from the savings account or elsewhere.  Furthermore, she has not provided any reason why an account opened after the Debtor's petition is not part of the bankruptcy estate.  As Walter has not carried her burden in asserting that a fact is genuinely in dispute, the court will grant partial summary judgment in favor of the Debtor on this point and will set the matter for hearing on damages.

**An issue of fact exists as to whether the BOA and SECU accounts contain exempt funds.**

Walter argues that the BOA and SECU accounts contain funds that the Debtor exempted in his schedules and therefore the funds are not property of the estate.  *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 641–44 (1992) (holding that funds claimed as exempt to which there was no timely objection were not part of the bankruptcy estate after expiration of the objections period).  Walter further contends that, whether or not funds entered or left the Accounts since the petition date, an exempted amount still exists in them because money is fungible.  Walter does not cite to any tracing principles or offer any facts in support of her claim that the Accounts contained exempt funds when she garnished them.

The Debtor does not dispute that both the BOA and SECU account held exempt funds when the petition was filed more than two years prior to the writs of garnishment.  However, he

argues that the funds he exempted in his BOA account were listed on Schedule B in 2011 and were spent and replaced by nonexempt funds by the time Walter requested the writs of garnishment in 2013. *See* Docket No. 117 at ¶¶8–10. To support this argument, the Debtor points to his BOA account statements which demonstrate that the funds had a low balance of $465.99 following the filing of his petition. Docket No. 117-35 at 18.

The court concludes that a dispute of material fact exists as to whether the BOA and SECU accounts held exempted funds when Walter served the writs of garnishment. This dispute precludes the entry of summary judgment for either the Debtor or Walter. Walter's only support for claiming that exempt funds existed in the BOA and SECU accounts when the writs of garnishment were served is the Debtor's schedules. The Debtor filed his schedules in 2011 some two years before the garnishments were served. Walter has not offered any other support for the court to determine whether or not the funds were exempt. Likewise, the Debtor states that the funds were not exempt in his motion, but these assertions are unsupported by affidavits or other evidence. Therefore, the court will deny summary judgment on this point and set the matter for trial to determine if the funds in the BOA and SECU account were exempt at the time Walter served the garnishment and, if not, for damages.

### Conclusion

For the foregoing reasons, the court will grant Walter's motion for summary judgment on the Debtor's claim that she violated the automatic stay by serving a writ of execution on Sunrise. The court concludes that §362(b)(2)(C) does not provide a defense to Walter's garnishment of the Accounts, and will grant the Debtor's motion for summary judgment that Walter violated the automatic stay by garnishing the Capital One account and will set this claim for trial on damages. The court will deny the cross-motions for summary judgment on the Debtor's claim that Walter

violated the automatic stay by garnishing the BOA and SECU accounts, and will set for trial the issue of whether the funds in these accounts were exempt property and, if not, damages for violation of the automatic stay.  A separate order will issue.

cc:    Debtor
       Debtor's counsel
       Judith L. Walter
       Trustee
       United States Trustee

**<u>END OF MEMORANDUM</u>**