Date signed September 29, 2015



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at GREENBELT

| In Re: | | | |
|---|---|---|---|
| Vitalis Ojiegbe | | Case No. | 11-11426-TJC |
| Debtor | | Chapter | 13 |
| Vitalis Ojiegbe | | | |
| Movant | | | |
| vs. | | Stay Violation | |
| Judith L. Walter | | | |
| Respondent | | | |

## MEMORANDUM OF DECISION

The debtor Vitalis Ojiegbe (the "Debtor") filed a motion seeking sanctions for violating the automatic stay against Judith L. Walter, Esq. ("Ms. Walter"), who holds a judgment against the Debtor for attorneys' fees incurred in representing the Debtor's former spouse in divorce proceedings. Through summary judgment and after a trial, the court concluded that Ms. Walter violated the automatic stay by garnishing the Debtor's bank accounts at Bank of America and Capital One bank. The court also concluded that Ms. Walter did not violate the automatic stay

by garnishing the Debtor's two bank accounts at State Employees Credit Union or by garnishing the cash held by a limited liability company owned by the Debtor.

Now before the court is the Debtor's claim for damages for the stay violations. For the reasons stated herein, the court awards damages of $255 for bank fees incurred by the Debtor, and denies the Debtor's request for emotional and punitive damages. In support of his claim for attorneys' fees, the Debtor has submitted fee statements showing all legal work provided, including the services provided to address Ms. Walter's actions that the court has determined did not violate the automatic stay. The Debtor will be given twenty-one days to submit fee statements or other appropriate support for the fees he seeks for Ms. Walter's actions that the court has determined violated the automatic stay.

## Jurisdiction

The court has subject matter jurisdiction pursuant to 28 U.S.C. §§1334(b) and 157(a) and Local Rule 402 of the United States District Court for the District of Maryland. This is a core proceeding pursuant to 28 U.S.C. §157(b)(1).

## Findings of Fact

On January 25, 2011, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. His plan was confirmed on August 29, 2011. *See* ECF 49.

The Debtor and his wife obtained a limited divorce in the Circuit Court of Prince George's County, Maryland, on September 27, 2012. The divorce judgment awarded attorneys' fees to Ms. Walter in the amount of $13,000. The fee award was reduced to a judgment against the Debtor in favor of Ms. Walter (the "Fee Judgment") in the amount of $13,000 on December 10, 2012.

On January 29, 2013, Ms. Walter requested writs of garnishment on the Debtor's personal bank accounts at Bank of America, N.A. (the "BOA Account"), Capital One Bank (the "Capital One Account"), and two accounts at State Employees Credit Union ("SECU") (the "SECU Accounts").  On February 15, 2013, the Clerk of the Circuit Court issued writs of garnishment of property to Bank of America, Capital One, and SECU.  All three institutions filed a garnishee's confession of assets.

After the Debtor received notice that Ms. Walter garnished the bank accounts, his domestic relations attorney, Anitha Johnson, unsuccessfully attempted to have the garnishments removed.  The Debtor's bankruptcy counsel, Edward Hanlon, then wrote to Ms. Walter by letter dated March 13, 2013, memorializing a phone conversation between the two from earlier that day.  Debtor's Ex. 9.  In the conversation, Mr. Hanlon, among other things, requested that Ms. Walter immediately unfreeze all of the bank accounts that were subject to a writ of garnishment, and agree to immediately suspend all further efforts to collect on the judgment.

After several phone conversations, Ms. Walter formally responded by letter dated March 25, 2013.  Debtor's Ex. 19.  Ms. Walter, who is not well versed in bankruptcy law, conducted substantial research on the issues raised in the March 13 letter.  She concluded – correctly – that the Fee Judgment was a domestic support obligation.  She further concluded – incorrectly – that a domestic support obligation is "exempt from the automatic stay." *Id.*[1]  Ms. Walter's blanket conclusion, that a domestic support obligation is exempt from the automatic stay, without regard

---

[1] As described further below, the court ruled in a Memorandum of Decision on summary judgment, that, pursuant to 11 U.S.C. §362(b)(2)(B), the automatic stay does not bar a party from seeking to collect a domestic support obligation from property that is not property of the estate.  It does, however, bar a party from seeking to collect a domestic support obligation from property of the estate, with certain exceptions not present here.  Ms. Walter did not make this distinction.

3

to the important distinctions the Bankruptcy Code makes under §362(b)(2)(B), is the cause of a substantial amount of the litigation between the parties.[2]

Although she believed the automatic stay did not apply, she nevertheless sent by facsimile a request to Bank of America, Capital One, and SECU seeking to release the funds from the garnishment. Ultimately, the holds on the accounts were released.

In her March 25 letter, Ms. Walter did not commit to suspending all further efforts to collect on the Fee Judgment, as requested by Mr. Hanlon in the letter of March 13. Because she continued to assert that the Fee Judgment was exempt from the automatic stay, Mr. Hanlon was concerned she would take further collection efforts. The Debtor is a physician who conducts his practice from a clinic that is owned and operated by Sunrise Medical Clinic, LLC ("Sunrise"). Sunrise is a limited liability company of which the Debtor is the sole member. On April 10, 2013, a sheriff's deputy appeared at the Sunrise medical office and served a writ of execution for all cash on hand. The writ had been requested by Ms. Walter on February 1, 2013. She had attempted to release the writ, but her efforts failed for whatever reason and the writ was served.

---

[2] In her interrogatory answer served on January 18, 2014, some seven months after the Debtor filed the motion for sanctions, Ms. Walter stated:

> The facts are that a judgment was entered in my favor against the Debtor in a divorce case which the Debtor initiated and against which my client defended. The fees were earned in connection with my representation of my client on custody, child support and alimony issues. The fee award is considered in the nature of a domestic support obligation under bankruptcy statutes and case law. The judgment was entered by a state court judge acting within her jurisdiction and authority to enter it. By federal bankruptcy law, that judgment is exempt from the automatic stay and non-dischargeable....
>
> Merriam-Webster online and print dictionaries define "exempt" as "free or released from some liability or requirement to which others are subject," or "to say that (someone or something) does not have to do something that others are required to do." My client was not required to ask the bankruptcy court to lift the stay with regard to receiving child support and alimony because no stay applied. The attorney fee judgment is a part of her child support and alimony, i.e. a domestic support obligation, under the Maryland Family Law Code. The attorney fee judgment unquestionably is a "domestic support obligation" under federal bankruptcy law. The automatic stay does not apply to these domestic support obligations. Since there was no stay, there was nothing to "lift" regarding these domestic support obligations. Asking the Court to lift a non-existent stay would have been a nullity. Debtor's Ex. 21 at 3-4.

Once the sheriff's deputy served the writ on Sunrise, Mr. Hanlon concluded that Ms. Walter would not cease her collection efforts. He filed the motion seeking a determination that she violated the stay and a request for sanctions soon thereafter. ECF 55.

**Procedural History**

In the motion for stay violation, the Debtor claimed that Ms. Walter committed violations of the automatic stay by obtaining the writs of garnishment on the BOA Account, the Capital One Account, the SECU Accounts, and by obtaining the writ of execution on Sunrise's cash on hand. After a lengthy discovery period, the parties filed cross-motions for summary judgment.[3] In a Memorandum of Decision resolving the cross-motions, the court concluded, among other things, that (1) Ms. Walter did not violate the automatic stay by obtaining the writ of execution on Sunrise's cash, because the cash on hand was not property of the Debtor's bankruptcy estate, ECF 146 at 9-11; (2) the Fee Judgment was a domestic support obligation and, therefore, whether Ms. Walter violated the automatic stay by serving the garnishments on the bank accounts depended on whether the funds in the accounts were property of the estate, as provided by §362(b)(2)(B), *id*. at 12-13; (3) Ms. Walter violated the automatic stay by obtaining the writ of garnishment on the Capital One Account because the funds in that account were property of the estate, *id*. at 19-20; (4) whether Ms. Walter violated the automatic stay by obtaining the writ of garnishment on the BOA Account or the SECU Accounts needed to be resolved at trial because the issue of whether the funds in those accounts were exempt property or property of the estate could not be resolved on summary judgment, *id*. at 20-21; and (5) the amount of any damages for the stay violation needed to be resolved at trial. *Id.* at 21-22.

---

[3] Prior to the hearing on the summary judgment motions, the court issued a Notice to Parties requesting them to address the question of whether the cash on hand at Sunrise was property of the bankruptcy estate and, if not, whether the writ of execution on Sunrise violated the automatic stay in the Debtor's case. ECF 126.

Subsequently, upon the conclusion of a two-day trial, the court issued a partial ruling from the bench. Specifically, for the reasons stated on the record, the court concluded that the funds in the BOA Account were property of the estate. Therefore, Ms. Walter violated the stay by garnishing those funds. The court also concluded that the funds in the SECU Accounts were exempt funds. Therefore, Ms. Walter did not violate the stay by garnishing those funds.[4] The court took under advisement the determination of the amount of damages for the stay violations.

## Conclusions of Law

As stated above, the court previously determined that Ms. Walter willfully violated the automatic stay by obtaining the writ of garnishment on the BOA Account and the Capital One Account. The only issue here is whether, and to what extent, the court should award damages.

The Bankruptcy Code provides debtors significant remedies against creditors who willfully violate the stay. Section 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages. §362(k)(1). "The award of actual damages is mandatory upon a finding of a willful violation of §362. However, the burden is on the debtor to demonstrate the extent of any damages" by a preponderance of the evidence. *In re Clayton,* 235 B.R. 801, 810 (Bankr. M.D.N.C. 1998) (citations omitted). Actual damages must be "founded on concrete, non-speculative evidence." *In re Seaton*, 462 B.R. 582, 595 (Bankr. E.D.Va. 2011) (citing *In re Rawles*, 2009 WL 2924005 at *2 (Bankr. D.Md. June 18, 2009)).

---

[4] In the bench ruling, the court stated that the Debtor did not meet his burden of establishing that the funds in the BOA Account and SECU Accounts were property of the estate. The court clarifies here that the matter was not resolved by allocation of burden, but that the great weight of evidence established these core facts.

The Debtor seeks damages for bank fees incurred as a result of the garnishments, emotional distress damages, punitive damages, and attorneys' fees. The court will address each category of damages in turn.

**General Compensatory Damages, Other than Attorneys' Fees**

Courts traditionally view "actual damages" as a broad umbrella term, including, but not limited to, lost time damages, out-of-pocket expenses, and emotional damages. *See In re Green Tree Servicing, LLC v. Taylor*, 369 B.R. 282, 288 (S.D.W.Va. 2007) (emotional damages); *In re Hafer*, 2013 WL 5925167 at *7 (Bankr. E.D.Va. Nov. 5, 2013) (lost time damages); and *In re Ellett*, 2014 WL 4926006 at *4 (Bankr. S.D.Ind. Sept 30, 2014) (out-of-pocket damages). In order to recover actual damages the debtor must establish by a preponderance of the evidence that a willful violation occurred, that damages were suffered, and that the amount of relief requested is appropriate.

In this case, the actual damages suffered by the Debtor are $255, without regard to attorneys' fees, which represents the bank fees incurred by the Debtor for, among other things, removing the garnishment of the Capital One Account. These damages are awarded to the Debtor.

**Emotional Damages**

A debtor may recover emotional damages under §362(k). *See In re Hafer*, 2013 WL 5925167 at *6 (quoting *In re Seaton*, 462 B.R. at 603) (holding that "emotional distress is an available component of 'actual damages' under §362(k) . . . ."). While claims for fleeting or trivial emotional distress are not compensable, an individual who suffers significant harm and demonstrates a causal connection between the harm and the violation of the automatic stay is entitled to be compensated. *Green Tree Servicing*, 369 B.R. at 288. To prove compensable

7

damage for emotional distress the debtor must: "(1) suffer significant harm; (2) clearly establish the significant harm; and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay." *In re Hafer*, 2013 WL 5925167 at *6 (quoting *In re Seaton*, 462 B.R. at 603). The court in *Hafer* noted that "[u]nless the creditor's conduct is particularly egregious, where emotional distress harm would be readily apparent, the claimant must establish emotional distress with corroborating evidence, such as expert testimony, medical testimony, or credible testimony from non-experts such as family members." *Id.*

In this case, there is insufficient evidence that the Debtor experienced significant emotional harm as a result of Ms. Walter's actions to warrant an award of emotional distress damages. Much of the Debtor's distress over Ms. Walter's actions resulted from her writ of execution on Sunrise, and the court has concluded that the Sunrise writ did not violate the automatic stay.

**Punitive Damages**

Section 362(k)(1) authorizes the court to grant punitive damages in "appropriate circumstances." Furthermore, under §362(k) "an award of punitive damages is within the discretion of the trial court and proper only in appropriate circumstances." *In re Clayton*, 235 B.R. at 811. Courts have adopted various standards for determining whether "appropriate circumstances" exist, but appropriate circumstances ordinarily are those in which the "creditor has demonstrated egregious, vindictive or intentional misconduct." *Id.*

The court in *Green Tree Servicing* articulated four different standards that courts have considered. 369 B.R. at 289. Some courts use "maliciousness or bad faith" as the guide. *Id.* Others consider whether "arrogant defiance of federal law" existed at the time of the violation. *Id.* A third group considers the "egregious, vindictive or intentional misconduct" of the party

8

who committed the violation. *Id.* Still other courts utilize a multi-factor standard and consider: "(1) the nature of the defendant's conduct; (2) the defendant's ability to pay; (3) the motives of the defendant; and (4) any provocation by the debtor." *Id.* (citation omitted). Regardless of the standard applied, all of the tests share a common denominator and that is that "punitive damages usually require more than mere willful violation of the automatic stay." *Id.*

Whichever of the foregoing standards the court applies, punitive damages are not warranted in this case. To be sure, Ms. Walter vigorously defended her position and her actions and, by her own admission, she did so without having a keen understanding of bankruptcy law. And her incorrect conclusion that efforts to collect a domestic support obligation, even if against property of the estate, are exempt from the automatic stay, has led to a good deal of unnecessary litigation. But that can be rectified through an award of legal fees. Her actions do not give rise to an award of punitive damages.

**Attorneys' Fees**

The primary dispute between the parties is the amount of legal fees, if any, which should be awarded to the Debtor. As an initial matter, Ms. Walter argues that attorneys' fees may only be awarded for time spent remedying a violation of the stay, and not for time spent prosecuting the action to recover damages as a result of the violation. She contends that most, if not all, of the Debtor's fees fall into the latter category. She urges this court to adopt the holding in *Sternberg v. Johnston*, 595 F.3d 937, 948 (9th Cir. 2009), *cert. denied,* 562 U.S. 831, 131 S.Ct. 102, 178 L.Ed.2d 29 (2010), that "a damages action for a stay violation is akin to an ordinary damages action, for which attorney fees are not available under the American Rule." *Id.*

In *Sternberg*, the debtor commenced an adversary proceeding against his ex-wife and her attorney alleging a willful violation of the automatic stay. *Id.* at 941-42. The bankruptcy court

9

entered a judgment for the debtor, finding that his ex-wife and her attorney willfully violated the stay and awarded damages and attorneys' fees, including fees for prosecuting the adversary proceeding. *Id.* at 942. The district court affirmed. On appeal, the Ninth Circuit considered whether §362(k) authorizes the award of attorneys' fees only for the work associated with remedying the stay violation, and not for a subsequent proceeding in which the debtor sought to collect damages for the stay violation. It held that "the proven injury is the injury resulting from the stay violation itself. Once the violation has ended, any fees the debtor incurs after that point in pursuit of a damage award would not be to compensate for 'actual damages' under §362(k)(1)." *Id.* at 947.

The Court reached this conclusion by considering both the statutory language and the policy considerations underlying the automatic stay. It found the phrase "actual damages" to be ambiguous, and consulted Black's Law Dictionary, which defines "actual damages" as "an amount awarded . . . to compensate for a proven injury or loss; damages that repay actual losses." *Id.* (citation omitted). This definition led the Court to conclude that the only injuries compensable as "actual damages" were those related to the stay violation itself and, once the violation ended, fees incurred "in pursuit of a damage award" are governed by the American Rule. *Id.*

The Court also considered the policy rationale behind the automatic stay and reasoned that allowing a debtor to collect attorneys' fees in prosecuting a damages action "would further neither the financial nor non-financial goals of the automatic stay." *Id.* The Court noted that "[w]e have never said the stay should aid the debtor in pursuing his creditors, even those who violate the stay. The stay is a shield, not a sword." *Id.* at 948.

As recognized by the Ninth Circuit itself, the *Sternberg* decision "has made calculating attorney's fees under 11 U.S.C. § 362(k)(1) unnecessarily complicated" because the court "construed § 362(k)(1)'s authorization of fee awards more narrowly than Congress likely intended." *In re Snowden*, 769 F.3d 651, 661 (9th Cir. 2014) (Watford, J., concurring). As Judge Watford stated, "[r]ead most naturally, the statute allows a plaintiff to recover attorney's fees incurred both in remedying a violation of the automatic stay and in bringing an action to recover the 'actual damages' caused by that violation." *Id.* In *Snowden*, the majority opinion explained the difficulty with *Sternberg's* "bright-line rule that attorneys' fees incurred in an attempt to collect damages once the stay violation has ended are not recoverable." *Id.* at 658 (quoting *Sternberg*, 595 F.3d at 948). The difficulty lies with determining when the stay violation ends. If the violation was rectified prior to the debtor filing an action to recover "actual damages," none of the fees incurred in prosecuting the suit may be awarded. However, if the violation was not rectified prior to commencing an action, the debtor may be entitled to recover attorneys' fees up to the date the court determines that a stay violation has occurred. *See id.* at 660. In *Snowden*, the Court determined that the debtor was entitled to recover attorneys' fees for the period prior to and including the date the Court determined that the creditor violated the automatic stay. *Id.*

Further, as subsequently pointed out to the Ninth Circuit, the *Sternberg* decision "is an outlier among the circuits and has received substantial criticism for both its statutory construction and policy analysis." *In re Schwartz-Tallard*, 765 F.3d 1096, 1100 n.2 (9th Cir. 2014). *See In re Grine*, 439 B.R. 461 (Bankr. N.D.Ohio 2010) (concluding that if the fees and costs claimed as damages are proximately caused by and reasonably incurred as a result of the violation then they should be allowed and criticizing *Sternberg*)*, and In re Duby*, 451 B.R. 664,

11

676-78 (B.A.P. 1st Cir. 2011) (affirming bankruptcy court's award of attorneys' fees for prosecuting a stay violation action and criticizing *Sternberg*), *and In re Parker*, 515 B.R. 337 (Bankr. M.D.Ala. 2014), *aff'd in part, vacated and remanded in part, Parker v. Credit Cent. South, Inc.*, 2015 WL 1042793 (M.D.Ala. Mar. 10, 2015), *appeal docketed*, No. 15-11204 (11th Cir. Mar. 23, 2015) (same).

     Moreover, both prior to and after *Sternberg*, bankruptcy appellate panels and circuit courts have held that attorneys' fees are recoverable for prosecuting a violation of the automatic stay. *See In re Sharon*, 234 B.R. 676 (B.A.P. 6th Cir. 1999) (holding that a debtor is entitled to recover attorneys' fees for an adversary proceeding where the violator's actions forced the debtor into court to recover losses), *and In re Hafer*, 2013 WL 5925167 at *7 (holding "362(k)(1) expressly provides for the recovery of attorney's fees for individual debtors, in the event that the court finds that the stay has been violated."), *and In re Repine*, 536 F.3d 512, 522 (5th Cir. 2008) (adopting a reading of §362(k) that allows for an award of "attorney's fees that were incurred prosecuting a section 362(k) claim.").

     With due respect to the Ninth Circuit, this court declines to follow *Sternberg*. The starting point, of course, is the statutory text. Generally, "unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language." *Hillman v. IRS,* 263 F.3d 338, 342 (4th Cir. 2001) (citing *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). The phrase "actual damages (including costs and attorneys' fees)" was added to the Code as §362(h) in 1984. *In re Parker*, 515 B.R. at 343. The simple fact is that in the ensuing thirty plus years, courts too numerous to cite have allowed attorneys' fees for prosecuting stay violations, and no other court has determined the phrase to be ambiguous. While the foregoing may not be a primary tenet of statutory construction, it is certainly the case that Congress is

presumed to know the law. Congress redesignated §362(h) to §362(k) in 2005, but did not alter the pertinent language. *In re Grine*, 439 B.R. at 470.

Further, even if the language is ambiguous, courts often apply a holistic approach to clarify the ambiguity because it may be clarified by context, or because only one of the permissible meanings produces a result that is compatible with the rest of the law. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988); *Yi v. Fed. Bureau of Prisons*, 412 F.3d 526, 530 (4th Cir. 2005) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (stating that analysis of particular statutory language is also informed by "the specific context in which that language is used, and the broader context of the statute as a whole.")). In this regard, the Fourth Circuit has expressed the significance of the automatic stay in *Grady v. A.H. Robins Co.*, 839 F.2d 198, 200 (4th Cir. 1988):

> The automatic stay is one of the fundamental debtor protections provided by bankruptcy laws. It gives the debtor a breathing spell from its creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

*Id.* The holding in *Sternberg* impedes a debtor's ability to realize these recognized protections. The court finds persuasive the reasoning of *In re Grine*. There, the court noted that the "fee shifting provision in §362 serves to protect rights belonging to persons in difficult circumstances that are not necessarily measured by money alone." 439 B.R. at 470. "[W]ithout such a provision, individual debtors' attorneys would be less likely to pursue vindication of the stay and their clients' rights thereunder, . . . because their . . . clients lack the money to pay . . . ." *Id.*

Many stay violations in individual debtors' cases are in the nature of wage or bank account garnishments, small claims actions, and the like. Rectifying the violation often requires the services of an attorney, such as in this case where the services of two attorneys were

13

necessary. Many individual debtors cannot even afford the services of an attorney to file the bankruptcy case; in this District, for example, the percentage of unrepresented individual debtors exceeds 19% of individual filings. U.S. Bankruptcy Court – District of Maryland Percent *Pro Se* Filings by Chapter, *http://www.mdb.uscourts.gov/sites/default/files/ProSePercent.pdf* (September 25, 2015). But whether or not they are able to afford representation in the bankruptcy case, individual debtors are often hard-pressed to pay for the additional services required to rectify a stay violation. Under the *Sternberg* approach, debtors undoubtedly would find it more difficult to retain counsel to rectify a stay violation if the attorney could not seek to recover fees from the offending party. Creditor regard for the automatic stay would diminish – creditors will lack incentive to pay the debtor's attorneys' fees required to rectify the violation knowing the debtor's cost to recover those fees may equal or exceed the costs and damages of rectifying the stay violation. As a Ninth Circuit bankruptcy judge pointedly asked "[w]hat good is it to be entitled to damages and attorneys' fees for a violation of the automatic stay if it costs a debtor much more in unrecoverable fees to recover such damages and recoverable attorneys fees?" *Bertuccio v. Cal. State Contrs. License Bd. (In re Bertuccio)*, Case No. 04-56255, 2009 WL 3380605 at *7 n.7 (Bankr. N.D.Cal. Oct. 15, 2009).

      The court therefore rejects the holding of *Sternberg* and will award fees that "have been proximately caused by and reasonably incurred as a result of the violation of the automatic stay." *In re Grine*, 439 B.R. at 471. Accordingly, the court turns to determining what fees meet this standard. As described above, in the motion for sanctions for the stay violation, the Debtor asserted that Ms. Walter committed five violations of the stay: one each by garnishing the BOA Account, the Capital One Account, and the SECU Accounts, and one by issuing the writ of execution on the cash held by Sunrise. The court has ruled that Ms. Walter violated the

automatic stay by garnishing the BOA Account and the Capital One Account, but that Ms. Walter did not violate the automatic stay by garnishing the SECU Accounts or serving the writ of execution on Sunrise.

Any award of attorneys' fees must take into account that Ms. Walter committed two stay violations, not five as alleged.  Stated otherwise, the Debtor is not entitled to an award of fees for the actions that the court has concluded did not violate the stay.  The Debtor, however, submitted at trial fee statements covering all services performed in connection with the stay violation.  He did so out of necessity, since the court was able to resolve only some of the disputes on summary judgment, and a final determination of which actions violated the stay had to be made at trial.

The Debtor shall be given an opportunity to submit revised fee exhibits showing the services counsel performed in connection with those actions that the court has determined violated the stay.

### Conclusion

For the foregoing reason, the court awards the Debtor $255 for damages for Ms. Walter's actions that violated the automatic stay.  The Debtor's request for emotional and punitive damages is denied.  The Debtor is given twenty-one days to submit fee statements or other appropriate support for the fees he seeks for Ms. Walter's actions that the court has determined violated the automatic stay.  The court shall enter an order accordingly.

cc:   Debtor
      Debtor's counsel
      Judith L. Walter
      Trustee
      United States Trustee

**END OF MEMORANDUM OF DECISION**